TOWN of COVENTRY

v.

Mark TURCO et al.

No. 89–119–Appeal.

Supreme Court of Rhode Island.

May 10, 1990.

Charles T. Rennick, Jr., Coventry, for plaintiff.

Malcolm A. Najarian, Providence, Peter D. Nolan, Coventry, for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on the defendants' appeal from a Superior Court judgment denying the defendants' motion to dismiss and granting the plaintiff's motion for a stay. The defendants further appeal the trial justice's vacation of an arbitration panel's award.

The defendant, Mark Turco, in his capacity as president of the International Brotherhood of Police Officers, Local No. 306 (union), alleges that the trial justice erred in denying the union's motion to dismiss and in granting the motion of the town of Coventry (town) for stay of the arbitration award because, according to defendant's assertion, the town failed to show sufficient cause to warrant a stay. The union and William Rathbun (Rathbun) assert that the trial justice erred in vacating the arbitrators' decision to include lump-sum sick-leave payments in Rathbun's base pay for pension-calculation purposes, on the premise that the arbitration panel did not exceed its authority. The union last asserts that public policy requires arbitration awards to be binding absent extraordinary circumstances. Accordingly we advert to a brief precis of the facts in order to discuss these issues in depth.

On July 31, 1987, Rathbun, a Coventry police officer, retired. At that time relevant sections of the collective-bargaining agreement (contract) between the union, the bargaining unit for Coventry police officers, and the town provided as follows:

"ARTICLE X

*Section 2. ILLNESS & INJURY (PERSONAL)*

\*     \*     \*     \*     \*     \*

(d) All accrued sick leave up to 120 days shall be paid to the officer at retirement at his/her regular rate of pay."

"ARTICLE XVIII

*Section 1. PENSION PLAN:*

\*     \*     \*     \*     \*     \*

(b) The town agrees to make the following changes to the existing pension program:

\*     \*     \*     \*     \*     \*

2. The retirement benefit shall be equal to 50% of base pay, holiday pay, longevity pay, any vacation time paid at termination and overtime (including vacation replacement) during the last twelve months of service."

Pursuant to article X of the contract, Rathbun was paid a lump sum representing 120 days of accrued sick leave. Rathbun and the union contended that the lump-sum payment should have been included in the base-pay figure that was used to determine Rathbun's pension. The town disagreed.

On August 21, 1987, defendants filed a class-action grievance with the town pursuant to article XV of the contract. The parties failed to settle their dispute, and

therefore, they went before a three-member arbitration panel in accordance with article XVI of the contract. On May 20, 1988, the panel issued an opinion. It found that even though the lump-sum sick-leave payment was not explicitly listed in article XVIII as part of an officer's base pay, neither were other types of pay that both parties agreed should be included in the base pay. The panel concluded that the evidence indicated the town considered other lump-sum sick-leave payments that were paid each year to be part of an officer's base pay, and therefore, article X, section 2(d) sick-leave payments should also be included in base pay for pension-calculation purposes.

On June 17, 1988, the town filed a complaint in Superior Court, seeking a vacation of the arbitration award pursuant to G.L. 1956 (1986 Reenactment) § 28–9–18.[1] On July 6, 1988, the union counterclaimed, seeking confirmation of the panel's award. On August 16, 1988, the defendants filed a motion to dismiss the complaint, asserting that § 28–9–18(b) requires that an arbitration award should be implemented before a party can move to vacate such award. On August 17, 1988, the town filed a motion for a stay pending resolution of the Superior Court action. On September 22, 1988, the trial justice entered an order that denied the defendants' motion to dismiss and granted the town's motion for a stay.

On February 6, 1989, the trial justice issued a decision, finding that the arbitrators had exceeded their power and reached a completely irrational result. The trial justice stated that the arbitration panel disregarded the terms of the contract in concluding that the time and the method of paying sick-leave benefits was not dispositive of the matter. The trial justice concluded that the arbitrators exceeded their authority in holding that the sick-leave lump sum should be included in Rathbun's base pay for the purpose of calculating Rathbun's pension benefits. The union filed a notice of appeal on February 23, 1989, and Rathbun filed a notice of appeal on February 27, 1989.

The union argues that the trial justice erred in granting the town's motion for a stay of the award when the town failed to show sufficient cause to warrant a stay. It is undisputed that the town never implemented the arbitration panel's award. The union asserts that the language of § 28–9–18(b) mandates the dismissal of a motion to vacate an award unless sufficient cause is shown to warrant a stay. The union contends that the trial justice could not have found sufficient cause because the town, which submitted a two-page memorandum in support of its motion, failed to show sufficient cause.

Section 28–9–18(b) provides:

"A motion to vacate, modify or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification or correction; provided, however, the court, *upon sufficient cause shown,* may order the stay of the award or any part thereof upon circumstances and conditions which it may prescribe." (Emphasis added.)

At the hearing on the town's motion for a stay and the union's motion to dismiss the

---

1. General Laws 1956 (1986 Reenactment) § 28–9–18 provides:

"Grounds for vacating award.—(a) In any of the following cases, the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:

(1) When the award was procured by fraud.

(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.

(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13.

(b) A motion to vacate, modify or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification or correction; provided, however, the court, upon sufficient cause shown, may order the stay of the award or any part thereof upon circumstances and conditions which it may prescribe.

(c) If the motion to vacate, modify or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorneys' fees of the prevailing party."

town's petition, the town asserted that its appeal from the arbitration award would be successful, using *State v. National Association of Government Employees, Local No. 79*, 544 A.2d 117 (R.I.1988) as a basis because the arbitration panel exceeded the provisions of the contract. The town also asserted that implementation of the award would cause irreparable harm to the town's budget. Not only would Rathbun secure his funds but other police officers who retired before and after Rathbun who are in the same situation would also seek an increase in their pensions. The town calculated that this would cost the town a total of approximately $80,000 per year. The trial justice granted the stay, stating that this case involves "a municipality that only can pay bills based on a [yearly] budget. * * * I think I have authority enough because the circumstances are such here that this award could possibly be overturned." The trial justice, however, ordered that if defendants prevail, the town must pay interest on the award.

■ Section 28–9–18(b) requires a party seeking to vacate, modify, or correct an arbitrator's award to implement the award first before the motion can be heard by the court. The court, however, in its sound discretion, may order the stay of the award or part of the award if sufficient cause is shown to the court. A trial justice's order to stay an arbitrator's award will be upheld absent an abuse of discretion. The town's assertions at the hearing established sufficient cause to warrant stay of the arbitrators' award. Our review of the record indicates that the trial justice acted well within his discretion in granting the town's motion for a stay.

■ The union and Rathbun assert that the trial justice erred in holding that the arbitrators exceeded their authority. It is well established that our judicial authority to vacate arbitration awards is limited. Absent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld. Moreover, as long as an arbitrator's award " 'draws its essence' from the contract and is based upon a 'passably plausible' interpretation

of the contract, it is within the arbitrator's authority and our review must end." *Jacinto v. Egan*, 120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978); *see also City of Pawtucket v. Pawtucket Lodge No. 4*, 545 A.2d 499, 503 (R.I.1988); *State v. National Association of Government Employees Local No. 79*, 544 A.2d 117, 119 (R.I.1988). "A reviewing court must determine whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the parties." 544 A.2d at 119 (citing *Rhode Island Council 94 v. State*, 456 A.2d 771, 773 (R.I. 1983)).

The arbitrators concluded that the town violated the contract by not including the lump-sum sick-leave payment in Rathbun's pension-benefit calculation. In reaching this conclusion, the arbitrators opined that the lump-sum payment was a negotiated benefit and, therefore, was part of Rathbun's base pay for pension purposes even though the lump-sum sick pay is not specifically included in article XVIII, section 1(b)(2), of the contract. The arbitrators reasoned that other negotiated benefits, including shift-differential pay, out-of-rank pay, plain-clothes pay, call-back pay, and any sick-leave payment made to an individual during the course of a year, were all considered part of a police officer's base pay for pension purposes even though they are not specifically listed in article XVIII, section 1(b)(2), of the contract. The arbitrators noted that these other negotiated benefits were all earned and paid during a certain period of time, but the accumulated and unused sick-leave benefit was generated over a long period of time and paid in a lump sum at the time of retirement. The arbitrators found this difference immaterial, stating:

"[D]espite this difference, it must be found that, based upon the evidence presented, any sick leave payment made to an individual during the course of a year is included in that person's base pay. To argue that a significant difference exists due to the time a sick leave benefit is paid or the method by which sick leave benefit is made is not dispositive of the issue. What is germaine and

crucial to this issue is that evidence clearly demonstrates that the Town considered that sick leave payments made to individual police officers during the year to be part of that person's base pay. Consequently, the fact that payment is made at one time as opposed to over a period of time is immaterial."

The Superior Court justice vacated the arbitrators' award regarding Rathbun's accumulated and unused sick-leave benefits, finding that the arbitrators exceeded their power and reached a completely irrational result. The trial justice noted that according to the contract, sick-leave days are governed by two separate provisions, article X, section 2(b), and article X, section 2(d).[2] The trial justice found that the arbitrators disregarded the terms of the contract when they concluded that the time and the method of paying sick-leave benefits were not material or dispositive of the issue. Under the contract there are 60 sick-leave days that do not fall within either of the relevant provisions of article X, section 2, and therefore, a police officer is not compensated at all for these days. Moreover, the trial justice found that each of the two separate provisions of the contract that govern sick-leave days is distinguishable. Article X, section 2(b), includes sick-leave days that exceed 180 at the rate of reimbursement of only 25 percent of the police officer's normal salary for each day over 180 days in the officer's December pay period. This reimbursement becomes part of the base pay for the fiscal year in which it was paid. Article X, section 2(d), provides for a lump-sum payment of up to 120 days of accumulated sick leave when the police officer retires, disbursed at the officer's regular rate of pay. Therefore, the trial justice concluded that the arbitrators "manifestly disregarded the contractual provisions" and exceeded their authority when they interpreted article X, sections 2(b) and 2(d), as the same for pension-calculation purposes and when they thereby included Rathbun's 120–day lump-sum sick-leave

payment in his base pay for calculating his pension benefits.

After our review of the record, we find that the trial justice was correct in concluding that the arbitrators exceeded their authority because we believe that they rewrote the contract when they included Rathbun's 120–day lump-sum sick-leave payment in his base pay for calculating his pension benefits. The provisions of the contract were all mutually agreed upon by the parties. The arbitrators had the power and the authority to interpret the contract, giving due regard to each provision, but they did not have the power and authority to rewrite it. Although public policy favors the final resolution of disputes, such as the pending matter, by arbitration, this policy relies on the premise that arbitrators act within their power and authority. In the instant case the arbitrators' decision was made in disregard of the existing agreement between the parties. The arbitrators concluded that the time and the method of payment of sick-leave benefits were immaterial and not dispositive of the issue. They also concluded that article X, section 2(b) and section 2(d) benefits should be treated the same (included in base pay) for pension-calculation purposes. We find that the arbitrators manifestly disregarded the contractual provisions and reached an irrational result. Moreover, we find that their interpretation of the contract was not passably plausible if due regard is given to each provision. Section 2(b) and section 2(d) are separate and distinct subsections of article X. Each has different requirements for time and manner of payment and eligibility for the specific sick-leave benefit listed. To treat distinct sick-leave benefits the same (included in base pay) for pension-calculation purposes is to rewrite the contract. Therefore, we find that the arbitrators' award was not within the arbitrators' authority because the award did not draw its essence from the contract and was not

**2.** Article X, section 2(b), provides:
 "If an officer has accumulated over one-hundred eighty (180) days sick leave as of December first of the calendar year, he shall be reimbursed at twenty-five (25) percent of his normal salary for each day over the one hundred eighty (180) days the first pay period in December."

based upon a passably plausible interpretation of the contract.

Accordingly, the trial justice correctly concluded that the arbitrators exceeded their authority when they included Rathbun's 120–day lump-sum sick-leave payment in his base pay for calculating his pension benefits. Hence the defendants' appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

KELLEHER, J., dissenting.

I would affirm the decision of the arbitration panel. I believe that the decision of the majority of the members of the panel draws its essence from the collective-bargaining agreement and is based upon a passably plausible interpretation of that agreement and, therefore, should be upheld.

This court has repeatedly stated:

"It is a well-established proposition that our judicial authority to overturn an arbitrator's award is limited. Absent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld. An arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its essence from the contract and is based upon a 'passably plausible' interpretation of the contract." *City of Pawtucket v. Pawtucket Lodge No. 4,* 545 A.2d 499, 503 (R.I.1988).

A review of the decision authored by the arbitration panel reveals that the panel did not disregard any contractual provision, nor did it reach a completely irrational result. In addressing the question of whether a lump-sum sick-leave payment made to Rathbun should have been included in his base pay for pension-calculation purposes, the majority of the members of the panel immediately identified the contractual provisions that might provide guidance in determining the dispute. The identified provisions, article X, sections 2(b) and 2(d), and article XVIII, section 1(b)(2),[3] as the majority of the members of the panel noted, do

not, however, provide an express solution to the issue in dispute.

The majority of the members of the panel observed that accumulated and unused sick leave was not specifically enumerated in article XVIII, section 1(b)(2), as an element included in an officer's base pay for purposes of pension calculations. However, the majority of the members of the panel indicated that numerous other negotiated benefits also absent from article XVIII, section 1(b)(2), were considered and included in an officer's base pay for purposes of calculating pension benefits. Furthermore they noted that sick-leave payments made to individual officers during the course of a given year, pursuant to article X, section 2(b), were considered by the town to be part of that particular officer's base pay. Unable to find any significant difference between a sick-leave payment that is made at a year's end and a lump-sum payment for sick leave accumulated over an officer's career, the majority of the members of the panel found that the town violated the collective-bargaining agreement by not including accumulated and unused sick-leave benefits in calculating Rathbun's base pay for pension purposes.

The majority of the members of the panel, faced with an issue not specifically addressed by the agreement, fashioned a remedy based upon their interpretation of the contract. My colleagues have reached the conclusion that the arbitrators "rewrote the contract when they included Rathbun's 120–day lump-sum sick-leave payment in his base pay for calculating his pension benefits." They indicate that treating "distinct sick-leave benefits the same (included in base pay) for pension-calculation purposes is to rewrite the contract." This is clearly not the case. Neither section 2(b) nor section 2(d) of article X expressly provides that either type of sick-leave benefit shall be included in base pay, nor does either section expressly provide for inclusion of the payment in the calculation of pension benefits. The only relevant difference between the two involves time of payment. Thus "that which is not written

3. These provisions are reproduced in the text of   the majority opinion.

 

cannot be rewritten." Hence any determination of this issue would necessarily require the panel to invoke its expertise so as to glean the essence of the agreement as it pertains to the calculation of pension benefits. In light of these observations, I believe that the decision of the majority of the members of the panel was based on a passably plausible interpretation of the agreement.

This court has stated that "judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with his construction of the contract is prohibited." *Council 94, AFSCME, AFL–CIO v. State,* 475 A.2d 200, 203 (R.I. 1984). There being no specific directive in the agreement concerning the particular issue at bar, it seems that the members of the majority have run afoul of the above-mentioned principle. For these reasons I respectfully dissent.