[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
I
CASE TRAVEL
These are two separate but combined proceedings filed by the plaintiff, Fraternal Order of Police, Lodge #24, hereinafter called the Union, and a Motion to Confirm an Arbitrator's Award filed by the State of Rhode Island, hereinafter called theState.
The arbitrator's decision and award was made and delivered to the parties on September 20, 1989.
Thereafter, on December 28, 1989, Union filed a "Miscellaneous Petition" seeking to vacate, modify and correct the arbitrator's decision and award. Also, at the same time, the Union filed a Motion to Vacate, Modify or Correct the arbitrator's decision and award.
On January 4, 1990 the State filed a Motion to Confirm the decision and award.
Although the case file docket shows the Union's Petition and Motion to have been filed on December 28, 1989, and the State's motion to have been filed on January 4, 1990, the case file was not referred to this Justice for decision until March 14, 1991.
For the reasons hereinafter set out, the State's Motion to Confirm the arbitrator's decision and award is granted; the Union's Miscellaneous Petition and its Motion to Vacate, Modify or Correct the arbitrator's decision and award are both denied and dismissed.
II
FACTUAL BACKGROUND
In early October, 1988, a collective bargaining grievance arose between the plaintiff union, representing the Rhode Island State Marshalls and their employer, the State. Pursuant to the collective bargaining agreement in existence between the parties they proceeded to arbitration. They stipulated the two issues generated by their dispute to the arbitrator, James S. Cooper, an American Arbitration Association arbitrator. Those issues were:
 (1) Did the State violate the Agreement (Article XXXVI) when it did not give the same medical benefits for retirees to the grievants that were awarded to the Rhode Island State Police in an interest arbitration award March 4, 1983 pursuant to Rhode Island General Laws 28-9.5-9? If so, what shall be the remedy?
 (2) Is the dispute arbitrable?
The arbitrator found that the "State did not violate Article XXXVI Section 36.1 of the parties 1986 to 1989 Agreement" and that the grievance-issue was in fact arbitrable.
In this case setting, the Union has taken the position that its members, State Marshalls, are entitled to the same continued family or individual health care benefits given by the State to retired members of the Rhode Island State Police. The Union's position is premised upon how it reads and interprets Section36.1 in the collective bargaining agreement between the parties to this dispute. That section reads:
 36.1 Any new category of fringe benefits negotiated with any other Union will be given to employees covered by this Agreement after July 1, 1983.
On March 4, 1983 the bargaining unit for the State Police and the State were parties to a labor grievance that resulted in an arbitration award providing health care benefits to State Police retirees. The Union here demanded those same benefits pursuant to its Section 36.1 labor contract provision. The State on the other hand in this case took the position that no other state employees enjoyed that continued health care fringe benefit after retirement and that service in the Rhode Island State Police was both distinguishable and unique when compared to other state employment. The arbitrator agreed with the State. The arbitrator distinguished the wording of Section 36.1 in the Union's contract by singling out the words "any new category of fringe benefits negotiated etc.", would become part of its agreement. The State Police retirement benefits, he concluded, were not benefits that had been negotiated. He reasoned that conclusion upon the plain meaning of the word "negotiated" in Section 36.1
absent any evidence that the parties to the collective bargaining agreement intended something other than its plain and ordinary meaning. Negotiation, he reasoned, did not contemplate an interest arbitration award. The Union here of course construes the word "negotiated" differently, and contends that it does contemplate every fringe benefit that any other labor union obtains, from whatever source and by whatever means.
III
JUDICIAL REVIEW OF ARBITRATION DECISIONS
The authority for this Court to review an arbitrator's decision is clearly circumscribed by R.I.G.L. § 29-9-18. That statute permits vacating an arbitration award in three specific instances.
 "(1) when the award was procured by fraud.
 (2) where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject matter submitted was not made.
 (3) if there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13."
In light of the clear directions given by § 28-9-18 certain cardinal rules of law have evolved with regard to an arbitrator's decision and award. Unless the reviewing court can find a "manifest disregard of the contractual provisions, or a completely irrational result" it must confirm the arbitrator's decision and award. Aetna Casualty Surety Company v. Grabbert
(R.I. April 23, 1991); State v. National Association ofGovernment Employees, Local 79, et al., 544 A.2d 117, 119 (1988); Jacinto v. Egan, 120 R.I. 907 (1978). This rule, especially in collective bargaining agreement cases, is based upon what is said to be a strong public policy favoring the private settlement of grievance disputes arising out of those agreements. Balanger v. Matteson, 115 R.I. 332, 355-356 (1975). Adherence to that public policy has led to judicial non-interference even in those situations wherein the arbitrator has misconstrued the collective bargaining agreement or the law pertaining thereto. Jacinto v. Egan, 120 R.I. 907, 911 (1978). Whether the agreement involves employees in the private or public sector, as in this situation, is of no significant distinction.Jacinto v. Egan, infra, 917; but see, (dissent beginningp. 917). An arbitrator's decision and award is, accordingly, untouchable as long as it "draws its essence from the contract and is based upon a `passable plausible' interpretation of the contract". State v. National Association of GovernmentEmployees, Local 79, et al., 544 A.2d 117, at 119 (1988). The burden of proving that an arbitrator's decision and award represents a manifest disregard of the provisions of the collective bargaining agreement or concludes therefrom an irrational result, is upon the party objecting to judicial confirmation of the arbitrator's decision and award. Town ofCoventry v. Turco, et al., 574 A.2d 143 (1990); CoventryTeacher's Alliance v. Coventry School Committee, 417 A.2d 886, 888 (1980).
IV
THE STATE'S MOTION TO CONFIRM THE ARBITRATOR'S DECISION
A close reading of the arbitrator's decision, and his reasons therefor reveals that he clearly understood and analyzed the two issues that had been submitted to him by the parties. He properly considered the contract and its negotiation background in resolving the disagreement between the parties over the interpretation of the word "negotiated". Town of Coventry v.Turco, 574 A.2d 143, 146 (1990). He considered the plain and ordinary meaning of that word and found no evidence or any reason to conclude an intention on the part of the Union and State to use that word differently in Section 36.1 of their contract.
In that regard, many years ago, Judge Learned Hand made the sagacious comment in Central Hanover Bank Trust Co. v.Commissioner, 159 F.2d 167, 169 (2nd Circuit 1947).
 "There is no more likely way to misapprehend the meaning of language — be it in a constitution, a statute, a will or a contract — than to read the words literally, forgetting the object which the document as a whole is meant to secure. Nor is a court ever less likely to do its duty than when, with an obsequious show of submission, it disregards the over-riding purpose because the particular occasion which has arisen, was not foreseen. That there are hazards in this is quite true; there are hazards in all interpretation, at best a perilous course between dangers on either hand; but it scarcely helps to give so wide a berth to Charybdis's maw that one is in danger of being impaled upon Scylla's rocks."
In this case, the burden of proving that the arbitrator's decision and award represented a manifest disregard of the collective bargaining agreement between the parties, and in particular, Section 36.1 therein, or that he reached an irrational result, was upon the Union. Coventry teachersAlliance v. Coventry School Committee, 417 A.2d 886, 888 (1980). It has failed to meet and carry that burden of proof. This Court finds that the arbitrator's decision and award draws its essence from the contract in question and is based upon a plausible interpretation thereof by the arbitrator. The Court further finds that the arbitrator did not exceed his authority in the matters presented to him by the parties, and that none of the factors in§ 28-9-20 R.I.G.L. have been shown. Accordingly, the State's Motion to confirm the decision and award must be and isgranted. Town of Coventry v. Turco, 574 A.2d 143, 146 (1990);Jacinto v. Egan, 120 R.I. 907, 912 (1978).
V
The Union's Miscellaneous Petition and its Motion to Vacate
As noted herein, the arbitration award and decision concerned in this proceeding was filed on September 20, 1989. On December 28, 1989 the Union filed in this Superior Court a "MiscellaneousPetition" seeking to vacate, modify or correct the arbitrator's award. In the Miscellaneous Petition, as well as in the Union's lengthy Brief filed on May 16, 1990 the Union contends that it is: ". . . specifically seeking relief under R.I.G.L. 10-3-12."
Title 10, Chapter 3, R.I.G.L. has no application whatsoever in collective bargaining agreement matters. That chapter isspecifically not applicable to "collective contracts between employers and employees, or between employers and associations of employees, etc." § 10-3-2 R.I.G.L.; See also,Industrial Trades Union v. Dunn Worsted Mills, 131 F. Supp. 945
(D.C., R.I. 1955). If for some unknown reason the Miscellaneous Petition was intended as an equitable proceeding, it could not be, because the claim for a jury trial contained therein is foreign to equitable proceedings and unknown at common law. In addition there is no statutory authority for a jury trial in this sort of an equitable proceeding in this State. Accordingly, the Union's "Miscellaneous Petition" is simply a legal nullity and is dismissed.
The Union also filed on December 28, 1989 a "Motion toVacate, Modify or Correct Arbitration Award" in accordance with10-3-15 as noted earlier, Section 10-3-15 has no application whatsoever to the existing collective bargaining agreement; but that error however is of no material consequence because this Court will assume that the Motion was actually intended to be filed pursuant to the proper statute, § 28-9-21 R.I.G.L.,
notwithstanding the Union's legal brief filed in support of its position. What is of material consequence however is that §28-9-21 R.I.G.L. requires that such a motion be served upon the adverse party and filed within three (3) months after the arbitration award is filed or delivered to the parties. NorthProvidence School Committee v. North Providence Federation ofTeachers, 122 R.I. 105, 107-108 (1979). In this case that date was September 20, 1989.
Thereafter, as previously noted, on December 28, 1989 at 2:47 p.m., the Union filed the Miscellaneous Petition just referred to, and disposed of, by this Court. At the same time the Union also filed its "Motion to Vacate, Modify or Correct" the arbitrator's award. That document appears to also bear the original Superior Court Clerk's filing stamp date of December 28, 1989 at 2:48 p.m. If that be so, then the Motion was filed eight (8) days after the statutory time for filing such a Motion and this Court would have no jurisdiction to entertain same. It appears however from the face of the Motion that the original date of filing has been superimposed with what clearly appears to be a "rolled back" dated clerk's filing stamp to show a filing of the Motion on December 20, 1989, which would have been the very last day for the filing of the Motion pursuant to § 28-9-21R.I.G.L. It thus appears from the case file that this out of time filing fact belatedly became apparent to someone and an attempt was thereafter made to conceal the late filing. That attempt was successful to a degree in that it went unnoticed by the State, and no motion to dismiss was filed. However, the unknown and errant Court Clerk's use of the "rolled back" filing date stamp was not only totally improper, but totally stupid as well. He or she rolled back the filing stamp, and back dated the Motion to a day and date when C.A. 89-7052 was not even in existence. That case number, as clearly evidenced by this Court's review of the original Court Clerk's receipt for the court filing fee shows that C.A. 89-7052 did not come into existence until December 28, 1989 at 2:48 p.m. That date is eight days after the required filing deadline date.
The defendant State of Rhode Island has not, as earlier noted, raised any question concerning the jurisdiction of this Court to entertain and decide the Union's Motion to Vacate. That failure is understandable because when one casually reviews the file, the "rolled back" filing date appears more prominent than the original and valid date marking. Such conduct on the part of whoever participated in the restamping of the filing date should not however be overlooked by this Court. Accordingly, "in the interest of orderly judicial procedure", this Court will raise sua sponte, the question of its jurisdiction on the Motion.Providence Redevelopment Agency v. Falcone, 92 R.I. 332, 335 (1961). There has been no waiver by the State of the jurisdictional issue, because subject matter jurisdiction may not be waived. LaPetite Auberge v. R.I. Commission for HumanRights, 419 A.2d 274, 280 (1980). Also, the waiver provisions in the Rules of Civil Procedure, if applicable on the instant facts, would not apply here, because the Rules of Civil Procedure do not apply to arbitration proceedings until a judgment in this Court is entered as provided in § 28-9-22 R.I.G.L., AmericanFederation of Teachers Local 2012 v. R.I. Board of Regents forEducation, 477 A.2d 104, 106 (1984).
Accordingly, the Union's Motion to Vacate, Modify or Correct the arbitrator's decision and award is dismissed.
Because of the Court's earlier decision on the State's Motion to Confirm, its consideration of the Union's Motion to Vacate is actually moot. However, because of the unusual happening regarding this case in the Court Clerk's Office, this Court believes that such happening should be exposed and not overlooked so as to give warning to whoever participated in such doing that justice is not always blind, and that state employment is a sacred trust, not to be lightly taken or performed.
Counsel will prepare an appropriate judgment for entry by the Court within 10 days.