DECISION
Before the Court is the Plaintiffs, Town of Smithfield, Motion to Stay the implementation of an arbitration award that was decided on June 13, 2000. The Defendants have objected to the Motion to Stay. The Plaintiff has also filed a Petition to Vacate Arbitration Award on July 11, 2000. This matter is set for hearing on August 15, 2000. This Court has found no reason for delay, nor has it discovered any disputed facts in reviewing the arbitrator?s opinion precluding a decision. Therefore, for the purpose of justice and judicial economy, this Court will make a final decision on the merits.
 Facts/Travel
The Town of Smithfield and Local 2050, International Association of Firefighters, AFL-CIO ("Union") were parties to a collective bargaining agreement ("CBA") that was in effect from July 1, 1997 to June 30, 2000. The President of Local 2050, Captain Bruce A. Bouchard, filed a grievance with Kenneth Venables, the Chief of the Smithfield Fire Department, on February 1999. The grievance alleged that the Town had violated Article IV, Section 11 of the CBA by appointing Lieutenant James Waterman as Emergency Medical Services Coordinator of the Department, instead of Private Scott Caron. Both Waterman and Caron had applied for the position after Chief Venables issued a Notice of Vacancy on January 4, 1999.
The grievance was ultimately denied by Chief Venables as untimely. The Town Manager also agreed the grievance was untimely, but also denied the claim substantively, asserting that the contract does not require either a specific bid system or that the EMS Coordinator position had to be a private. Then, pursuant to the CBA, the grievance was submitted to arbitration on February 22, 2000 before Susan Brown. On June 13, 2000, Ms. Brown issued the following award:
 Award
The grievance over the appointment of Jimmy Waterman as EMS Coordinator was timely.
The Town violated Article IV of the collective bargaining agreement when it named Lt. Jimmy Waterman as EMS Coordinator.
Within 30 days of this award, the Town shall transfer Pvt. Scott Caron to the position of EMS Coordinator and pay him at the contractual rate. It shall also pay Pvt. Caron the difference between what he earned between 29 January 2000 and the date he assumes the Coordinator's position, and what he would have earned had he been properly transferred. This make-whole amount shall include base salary, longevity, holiday pay and overtime.
The Arbitrator retains jurisdiction for 60 days from the date of this award for the sole purpose of resolving any disputes arising from the implementation of the back pay portion of the remedy.
 Arguments
Initially, the Town of Smithfield argues that it has met its burden for this motion and that a stay of the arbitrator's decision should be issued pursuant to R.I.G.L. § 28-9-18. The Town, citing Town of Coventry v. Turco, 574 A.2d 143 (R.I. 1990), asserts that sufficient cause has been shown to issue the stay, in that the Town's argument that the arbitrator exceeded her powers was likely to be successful, and the implementation of the award would result in irreparable harm to the Town. See Turco at 145-46. In support of the argument that the arbitrator exceeded her powers, the Town states that she "showed a manifest disregard for the unambiguous provisions of the [Collective Bargaining] Agreement" because the language of the Agreement unambiguously allows the Chief to appoint any uniformed employee from the Department to the position of EMS Coordinator. Appointment of the EMS Coordinator position, argues the Town, is clearly governed by Article I, Section 5 and Article IV, Section 11 of the Agreement,[1] which essentially gives the Chief of the Department discretion on whom to transfer, hire or assign.
The Town also argues that irreparable harm will result if the award is implemented because Private Caron has not been trained for the position and is less qualified. Additionally, the Town argues that it will be required to spend public funds which are not in the yearly budget, and that the money may not be recoverable if the arbitrator's award is overturned.
The Union argues that the arbitrator displayed no manifest disregard for the collective bargaining agreement provisions in making the award, and that a Superior Court Justice's mere disagreement with the arbitrator as to contract interpretation is not grounds to overturn that award. See Jacinto v. Egan120 R.I. 907, 391 A.2d 1173 (1978). The Union also maintains that the arbitrator correctly relied on certain "past practices" of the Department to limit the management's rights because the Agreement was not silent on the issue of bidding for transfers, and therefore, no challenge to the substantive arbitrability of the subject matter of the grievance. Furthermore, the Union argues that the stay should not be granted because the Town will suffer no irreparable harm, in that the amount of the arbitrator's award only amounts to slightly over $5, 000, and could easily be recovered from Private Caron through a payroll reduction in the event the Award is vacated.
 Standard of Review
"Judicial authority to review or vacate an arbitration award is limited." R.I. Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 587 (R.I. 1998). A court may not "reconsider the merits of the award despite allegations that it rests upon errors of fact or on a misinterpretation of the contract." Id. (quoting United Paperworkers International Union, AFL-CIO v. Misco, Inc.484 U.S. 29, 36 (1987)). The rational behind this deferential treatment has been justified on the ground that "broad judicial review in this area undermines the strong governmental policy encouraging the private settlement of labor grievances through the relatively inexpensive and expedient means of arbitration." Id. That being said, however, "a court may vacate an arbitration award that manifestly disregards a contractual provision or yields an irrational result." R.I. Council 94 at 588, see also Rhode Island Laborers' District Council v. State, 592 A.2d 144, 146 (R.I. 1991), Town of Coventry v. Turco 574 A.2d 143, 147 (R.I. 1990).
As the Supreme Court in Rhode Island Council 94 pointed out, the court is indeed required to vacate an arbitration award pursuant to R.J.G.L. § 28-9-18 under certain circumstances. R.I.G.L. § 28-9-18 states in full:
 § 28-9-18. Grounds for vacating award.
(a) In any of the following cases the court must make an order vacating the award, upon application of any party to the controversy which was arbitrated: (1) When the award was procured by fraud. (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made. (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. (b) A motion to vacate, modify, or correct an arbitrator's award shall not be entertained by the court unless the award is first implemented by the party seeking its vacation, modification, or correction; provided, however, the court, upon sufficient cause shown, may order the stay of the award or any part thereof upon circumstances and conditions which it may prescribe. (c) If the motion to vacate, modify, or correct an arbitrator's award is denied, the moving party shall pay the costs and reasonable attorney's fees of the prevailing party.
An arbitrator's authority is "contractual in nature and is limited to the powers conferred in the parties [collective bargaining agreement]," and an arbitrator is "confined to interpret the terms of the agreement so as to effectuate the intentions of the parties to the contract." Rhode Island Council 94 at 588. As the Rhode Island Supreme Court noted, an arbitrator may "look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." Rhode Island Council 94 at 588- 89 (quoting United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960). "An award so palpably faulty that it fails to embody even a passably plausible interpretation of the contract must be struck down by the court upon review." Rhode Island Council 94 at 588 (noting § 574 A.2d at 147-48).
Finally, "because arbitration is a creature of the agreement, the preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." Rhode Island Court Reporters Alliance v. State, 591 A.2d 3.76, 378 (quoting United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 570-71 (1960)). Whether that issue or grievance is arbitrable is a question of law to be reviewed by the court de novo." State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU 747 A.2d 465, 468 (R.I. 2000)(quoting Rhode Island Council 94, 714 A.2d at 588, n. 2).
 Analysis
In recent years, our Supreme Court has had the opportunity to review a number of Superior Court decisions regarding motions to stay or vacate the implementation of arbitration awards. This Court is fully aware of the deference to be given arbitrators in order to preserve the "strong governmental policy encouraging the private settlement of labor grievances" through arbitration. That being said, however, this Court also has a duty as prescribed by the Rhode Island Supreme Court to "recognize those instances in which an arbitrator reaches beyond the terms of the parties' CBA for the purpose of rendering what he or she believes is a more desirable result." R.I. Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 587, 594 (R.I. 1998). The Supreme Court also noted that "[a]lthough an arbitrator must resolve ambiguities surrounding the scope of the language employed in a CBA, he or she may not "ignore clear-cut contractual language' or assign to that language a meaning other than that which is plainly expressed." Id. "Such amendment by interpretation effectively "usurp[s] the role of the labor organization and the employer' in the collective-bargaining process." Id.
In the present case, the arbitrator overturned the Chief of the Fire Department's decision to hire Lieutenant Waterman instead of Private Caron based upon on the language of the CBA and her perceived intentions of the parties when entering into that agreement. Her decision was ultimately based upon the definition of "firefighter," as defined in the agreement, and what firefighter rank is required to hold the position of EMS Coordinator. She also concluded that the present case involves an arbitrable grievance, and was timely filed. Although this Court agrees with the arbitrator in as much as the grievance was arbitrable and timely, and agrees with her determination regarding the bidding process, this Court believes that the arbitrator disregarded the plain language of the CBA by finding that the EMS Coordinator position can only be filled by the rank of Private.
Under the "Smithfield Fire Department, Duties and Description, Rules and Regulations," the position of EMS Coordinator is defined as a "firefigher assigned to headquarters by the Chief of the Department." (emphasis added) Although the arbitrator recognized that the CBA defined "firefighter" to mean "all permanent employees of the paid fire department of the Town with the exception of the civilian employees," she takes a seemingly tortuous route to underpin and disregard those clear definitions and descriptions to hold that the EMS Coordinator position is meant for Privates only. She maintains that she found several occasions within portions of Articles III, IV, XI, and XII of the CBA where the term "firefighter" was used when intended to apply only to Privates. These articles, however, require a differentiation among ranks of all firefighters. There is also no persuasive connection between those Articles and the specific situation, namely: What rank is allowed to fill the EMS Coordinator position.[2] This Court can find no rational purpose to go beyond the clear and generic definition and description of the EMS Coordinator position and the definition of firefighter found in the CBA and the Rules and Regulations. The arbitrator herself although claiming the usage was somewhat "murky," noted that the "contractual definition [of firefighter] is clear."
Article IV, Section 11 of the CBA states that "[t]he detailing or transferring from one unit to another within the fire department shall be the responsibility of the Chief of the Department." This provision leaves the Chief with a fair amount of discretion as whom to chose for transfers within the department. The Chief is limited, however, by Section 11, which states that "[i]n any case, insofar as practicable, the qualified senior employee covered by this Agreement shall have the right to transfer to any vacancy in the Department." The arbitrator cites this part of Section 11 and goes to great lengths to try to undermine the clear provisions found in the CBA regarding the definition of firefighter and EMS Coordinator. She claims that the EMS Coordinator position must have been meant only for Privates because the "contract provides for no tie breaker [when transferring an employee] where the employees are of different rank." Seniority does not seem to be at issue here, however. The arbitrator noted that "despite testimony that Lt. Waterman is senior to Pvt. Caron, documents indicate they have the same hire date."
Under her conclusions, the Chief is left with little or no discretionary ability to transfer, hire or assign anyone within the Department. That, in effect, distorts the Chiefs flexibility for filling an important position such as the EMS Coordinator. That is simply not the intention of the language found in Article 1, Section 5 and Article IV, Section 11, where the Chief is given the responsibility of hiring, assigning and transferring employees within the department. (See footnote 1.) Furthermore, precluding everyone other than Private from the EMS Coordinator position would severely tie the hands of the administration in filling the position, and preclude all firefighters holding rank other than Private from consideration. Again, that could not have been the parties' intention.
Therefore, this Court finds that the arbitrator's decision and conclusions yielded an irrational result in that it leaves the Chief of the Fire Department with little or no discretionary power to transfer employees within the Department, and precludes all "firefighters" above the rank of Private from this position. By taking away the Chiefs discretionary power, she effectively usurped the role of the Union and the Town of Smithfield in the collective-bargaining process and exceeded her powers. See Rhode Island Council 94 at 588, R.I.G.L. §§ 28-9-28. Furthermore, her opinion goes beyond the scope of the language employed in the CBA, and although it draws its essence from the CBA, "it fails to embody even a passably plausible interpretation of the contract," and must be reversed. See Rhode Island Council 94 at 588 (noting Turco, 574 A.2d at 147-48). The position of EMS Coordinator is described as a "firefighter" under the Smithfield Fire Department's "Duties and Descriptions, Rules and Regulations," and the definition of a firefighter in the CBA is designed to mean "all permanent employees of the paid fire department of the Town." Collective Bargaining Agreement, Article XVIII, Paragraph. (a)(l). The Chiefs transfer of Lieutenant Waterman as EMS Coordinator is therefore upheld. The Award of June 13, 2000 is vacated and the Motion to Stay, being moot, is dismissed.
[1] Article 1, Section 5 of the CBA states in pertinent part:
Section 5: Management Rights Any and all rights concerned with the management and operation of the Fire Department are exclusively that of the Town unless otherwise provided by the terms of this agreement. The Town has the authority to adopt rules for the operation of the Department and the conduct of its employees in the performance of their duties, provided such rules are not in conflict with the provisions of the Agreement nor with the applicable laws and with the duly established past practices of the parties as defined by law. Such rights shall include, but are not limited to the following: to determine the standards and level of services to be offered by the Fire Department; the standards applicable to selection of employment; . . . to hire and assign and transfer employees within the department. The parties agree that the provisions and benefits provided by the Town under the Personnel Ordinance of the Town of Smithfield and the Rules and Regulations of the Smithfield Fire Department to the employees herein covered by this Agreement, but not specifically enumerated herein, shall continue to apply.
Article IV, Section 11 of the CBA states in pertinent part:
Section 11: Transfers Within Department a) The detailing or transferring from one unit to another within the fire department shall be the responsibility of the Chief of the Department. b) . . . In any case, insofar as practicable, the qualified senior employee covered by this Agreement shall have the right to transfer to any vacancy in the Department. If no employee bids to transfer, then the employee with the least amount of seniority (qualified) on the department shall fill the vacancy.
[2] For instance, Article III pertains mainly to wages and compensation. Article IV Section 11 (b) seemingly has no application to the present case because the arbitrator found documents showing both candidates were of equal seniority. (Accepting these documents as true, this Court would still question the applicability of this specific section to these particular facts.) Article XI refers to retirement, life insurance, and specialized duty pay, but gives no indication that the EMS Coordinator position is meant exclusively for Privates. Just because a Private may be entitled to extra compensation as EMS Coordinator does not lead to the conclusion that the position is meant for Privates only. Finally, Article XII refers mainly to reimbursement for education expenses and uniform allowance, and sheds no light on what rank is entitled to the EMS Coordinator position.