DECISION
Before the Court are the petitions of Shaw Construction (Shaw) and the State of Rhode Island (State). Shaw moves this Court to confirm an arbitrator's award, and the State seeks to vacate the same award. Jurisdiction is pursuant to G.L. 1956 § 10-3-11 et seq.
 FACTS AND TRAVEL
A construction agreement between Shaw and the State became the subject of arbitration. By decision dated November 17, 2000 in American Arbitration Association case number 11-110-00861-99 entitled In the Matter of the Arbitration between Shaw Construction Corporation and United Pacific Insurance Company and State of Rhode Island Department of Human Services Rhode Island Veterans Cemetery, the arbitrator, Charles F. Brown, (Brown or arbitrator), made factual findings and conclusions of law, a summary of which follows.
Shaw Construction entered into a construction agreement (Agreement) with the State of Rhode Island on or about May 29, 1998 by which Shaw would build a memorial to Rhode Island veterans at the Veterans' Cemetery in Exeter, Rhode Island. According to plans and specifications, the memorial was to have two granite walls similar to the Vietnam Veterans' Cemetery in Washington D.C. Names of Rhode Island veterans were to be engraved on those granite walls.
The Agreement required that the walls be built with Impala granite, but it also set forth the criteria for any change or substitution of materials prescribed for construction. The Agreement stated that any substitute material must be of equal quality to that set forth in the Agreement, and the substitution must be approved for use by the architect, in this case, Susan Bradford (Bradford). (Emphasis added).
On July 21, 1998 Shaw provided a sample of Impala, which was approved by Bradford, an agent of the State hired as an architect for the project. On August 4, 1998 Shaw expressed concern that the Impala supplier, Fletcher, thought that there might be a problem with the "Buy American Act" and an "embargo." (Arbitration Decision at 1). Although no problem developed, on August 11, 1998
Shaw expressed that it was seeking another supplier because it continued to doubt Fletcher's ability to deliver in time for Shaw to complete its performance under the Agreement. On August 14, 1998 Shaw submitted to Bradford two other samples of granite including a sample of Peribonka granite which she subsequently approved for use on the monument on August 18, 1998.
Construction on the monument began in June 1998 and was relatively uneventful until August 1999 when problems with the granite and the pavement became apparent. On August 4, 1999 problems with the granite were discussed at a meeting attended by, among others, Bradford; Waterman Engineering, Inc. (Waterman), the firm hired as project engineer; and Anothony Sciolto (Sciolto), whose business held the contract to engrave the granite panels.
Cracking along the grain line of the granite was observed by the parties only after the granite was installed according to the instructions in the Agreement. Sciolto expressed his unwillingness to engrave upon the granite due to his belief that the granite was construction grade and not suitable for engraving.
On September 30, 1999 the State demanded that Shaw replace the faulty granite or the State would take steps afforded to it under the Agreement to complete the project using a different construction company. Shaw responded on October 13, 1999 stating that the selection of the Peribonka granite was the responsibility of the State through its architect, Bradford. In an effort to complete its performance under the contract, Shaw agreed to replace the faulty granite with Peribonka but would not replace it with Impala without additional compensation.
By October 1999, performance of the Agreement ceased, and the parties presented this grievance to Brown for arbitration in July 2000.[1] Brown rendered his decision on November 17, 2000.
 STANDARD OF REVIEW
Confirmation of an arbitration award is governed by § 10-3-11, which states:
 "At any time within one year after the award is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court must grant the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12 — 10-3-14. Notice in writing of the application shall be served upon the adverse party or his or her attorney ten (10) days before the hearing on the application."
Limitation or modification of an arbitration award is pursuant to §10-3-12, which provides:
 "In any of the following cases, the court must make an order vacating the award upon the application of any party to the arbitration:
 (1) Where the award was procured by corruption, fraud, or undue means.
 (2) Where there was evident partiality or corruption on the part of the arbitrators, or either of them.
 (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced.
 (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
This Court's "authority to review the merits of an arbitration award is very limited." Rhode Island Brotherhood of Correctional Officers v. State of Rhode Island Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998). This Court must determine "whether the arbitrator has resolved a grievance by considering the proper sources, such as the contract in effect between the two parties." Town of Coventry v. Turco, 574 A.2d 143, 146 (R.I. 1990) (quoting State v. National Association of Government Employees Local No. 79, 544 A.2d 117, 119 (R.I. 1988) (citing Rhode Island Council 94 v. State, 456 A.2d 771, 773 (R.I. 1983)). The general rule is that "'[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld.'" Rhode Island Brotherhood of Correctional Officers v. State of Rhode Island Department of Corrections, 707 A.2d at 1234 (quoting Town of Coventry v. Turco, 574 A.2d at 146). The Court will uphold the arbitration award "so long as an arbitrator's award `draws its essence' from the contract and is based on a `passably plausible' interpretation of the contract. . . ." Town of Coventry v. Turco, 574 A.2d at 146 (quoting Jacinto v. Egan,120 R.I. 907, 912, 391 A.2d 1173, 1176 (1978)). Furthermore, the Court will vacate the arbitration award if the arbitrator "manifestly disregarded a contractual provision or reached an irrational result. . . ." Id. In reaching a decision, the Court "may not reconsider the merits of an award despite allegations that it rests upon errors in fact or on a misrepresentation of the contract." Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998). The Court's role "is to determine whether the arbitrator has rationally resolved the grievance by considering the contract between the parties and the circumstances out of which come the so-called common law of shop." Id. at 589. Finally, " . . . the courts look with disfavor on efforts to overturn arbitration awards and thereby frustrate the arbitration process. Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene." Prudential Property and Casualty Insurance Company v. Joyce M. Flynn, 687 A.2d 440, 441 (R.I. 1996) (quoting Aetna Casualty Surety Company v. Grabbert,590 A.2d 88, 92 (R.I. 1991)). Because "public policy favors finality of arbitration awards . . . parties . . . are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." Id. As long as the objecting party has ample opportunity to present evidence, then there is no abuse on the arbitrator's part. See Taylor et al v. Delta Electric Power, Inc., 741 A.2d 265, 267 (R.I. 1999).
 THE PETITION TO CONFIRM THE ARBITRATOR'S AWARD
The State argues that in finding that Shaw rightfully substituted Peribonka granite for Impala, Brown disregarded a contractual provision, thus rewriting the contract and producing an irrational result. The State further claims that Shaw wrongfully induced Bradford to approve the Peribonka in place of the Impala by making false statements about Fletcher regarding delivery delays of the Impala.
The State also asserts that Shaw wanted to change the granite to Peribonka for its own financial reasons to avoid prepayment to Fletcher for the Impala.
Brown first determined that even if the State's assertions were true, "a contractor is entitled to conduct its business at its best advantage as long as it complies with the plans and specifications [of the Agreement]." (Arbitration Decision at 1). He also concluded that the requirements of this Agreement, specifically that the architect is the approval authority for any changes in the Agreement, were very clear and that Shaw received appropriate approval for the change of granite from Bradford.
With respect to the quality of the granite used by Shaw in construction, Brown considered whether the Peribonka was appropriate as specified in the Agreement. Brown based this decision that it was on evidence that Bradford found the Peribonka to be "equal and suitable for the intended purpose" and also on the fact that no contrary opinion was expressed until July of 1999 when cracks and spalling began to appear after the Peribonka was installed. (Id. at 2). Brown noted that the fact that problems with the granite did not arise until after installation was significant because that subsequent occurrence indicates a design flaw rather than a problem with the granite. The design of the monument neither included any provision for the expansion or contraction of the granite panels, nor provided for water drainage away from the granite panels. These defects were corrected in the State's replacement bid contracts which Brown found indicated the State's culpability regarding the error in the original design. The arbitrator also concluded, from samples of Peribonka presented as evidence, that it engraved very well.
In regard to complaints lodged against Shaw for subsequent defects with the pavement, Brown found that the problems arising from its use were due to a specification error made by the State in the Agreement rather than from any mistake made by Shaw. The complaints alleged included water retention on the pavement, the quality of the pavement and the leaching of a substance from precast capstones. Accordingly, he found that Shaw's use of the concrete was in accordance with the Agreement.
The arbitrator additionally concluded that the Agreement set forth means for both dispute resolution and termination of the Agreement, both of which the State ignored. The State was obligated to follow the "Claim and Disputes" clause of the contract when it took issue with Shaw's performance. (Id. at 3). The State's failure to do this resulted in unfair treatment of Shaw which was not given proper notice of the State's grievance and was thus denied the right to pursue protection under the Agreement.
After thorough review of the arbitrator's decision and consideration of the memoranda submitted by the parties, this Court confirms the arbitration award issued by Brown. This Court finds that Brown's decision "draws its essence" from the Agreement between the parties and is based on a "passably plausible" interpretation of that Agreement. The State has not met its burden of presenting sufficient evidence for this Court to find that Brown "manifestly disregarded" the Agreement, reached an "irrational result," or rewrote the Agreement as the State argues he did. Therefore, Shaw Construction's Petition to Confirm the Arbitrator's Award is granted, and the State's Petition to Vacate the Arbitrator's Award is denied.
[1] In late October of 1999, the Department of Administration (Department) suspended Shaw from bidding on State work for a period of two years pursuant to the Rhode Island Procurement Regulations and Rhode Island Procurement Law. That suspension was based on information provided to the Department by the Department of Human Services/Rhode Island Veterans Cemetery and basically consisted of Sciolto's opinion that he could not engrave the Peribonka. That suspension remains in effect. Bradford Associates et al v. Rhode Island Division of Purchases et al,772 A.2d 485, 490 (R.I. 2001).